BANK OF BENTONVILLE *v.* SWIFT & CO.

5-2419                                   348 S. W. 2d 881

Opinion delivered September 11, 1961.

*Little & Enfield,* for appellant.

*James R. Hale* and *Charles L. Gocio,* for appellee.

SAM ROBINSON, Associate Justice.    Appellant, Bank of Bentonville, filed this action in the circuit court, alleging that appellee, Swift & Company, had purchased from one Dale Moore 2,499 turkeys valued at about $6,000 and had converted such turkeys to its own use; that the turkeys belonged to Bright & Son, and that appellant held a mortgage on them as part security for a note in the sum of $15,750.00. Swift answered, alleging that the mortgage covered other personal property in addition to the turkeys bought by appellee and that the mortgage also covered certain real estate. In addition, Swift, the appellee, alleged that there should be a marshaling of the assets covered by the mortgage and moved that the cause be transferred to equity. The motion to transfer

was granted. In chancery court a motion by appellant to transfer back to circuit court was overruled. On a trial in chancery court Swift demurred to the evidence. The demurrer was sustained and a decree rendered in favor of Swift. The Bank has appealed.

There are two points to be decided: Did the chancery court err in retaining jurisdiction, and if not, did the court err in sustaining the demurrer to the evidence?

First, the chancery court had jurisdiction. If the Bank had a valid and enforceable mortgage, Swift & Company owned the turkeys subject to such mortgage, and may have had the right to a marshaling of assets. Not only did the mortgage held by the Bank cover the turkeys bought by Swift, but covered other turkeys, as well as a Ford truck and certain real estate. The marshaling of assets is a proceeding peculiarly within the jurisdiction of the chancery courts.

In 35 Am. Jur. p. 384, it is said: "Among the various precepts which govern the action of equity courts is the principle of marshaling, in accordance with which assets and securities of a debtor are resorted to or apportioned in such a manner as to secure protection to the rights of each of two or more creditors, or of a creditor and *some person other than a creditor having an interest in such assets and securities*." [Emphasis supplied.]

In *Bagley* v. *Weaver*, 72 Ark. 29, 77 S. W. 903, the Court said: "This was a complaint for the marshaling of assets. The appellant stated that he bought and paid cash for land, and that another party had a mortgage on the same land and various other property, . . . It would have been inequitable to sell the property bought by complainant to satisfy the amount due upon the mortgage upon it and other property included in the mortgage without first exhausting that upon which the appellant had no lien or claim."

Next, the chancellor did not err in sustaining the demurrer to the evidence. It was shown beyond a shadow

of a doubt by the appellant's evidence in chief that the plaintiff Bank authorized Mr. Bright, the mortgagee, to sell the mortgaged property. In *Farm Bureau Cooperative Mill & Supply* v. *Swift & Company,* 227 Ark. 182, 297 S. W. 2d 107, a case very similar to the one at bar, the Court quoted from *Fincher* v. *Bennett,* 94 Ark. 165, 126 S. W. 392: ". . . where the mortgagee authorizes or gives consent to the mortgagor to sell the mortgaged property, the mortgage lien thereon is discharged. Under such circumstances, a bona fide purchaser for value from the mortgagor obtains a good title to the property, whether he knew of the existence of the mortgage or not." The Court also said in the *Farm Bureau Cooperative Mill* case, *supra,* that the demurrer to the evidence had been considered in the light of *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225, and in giving the evidence its strongest probative force it did not make out a prima facie case. The same thing is true here. Regardless of what the Court in the case at bar may have considered in reaching a decision to sustain the demurrer, the fact remains that according to the evidence introduced by the Bank, it authorized Bright to sell the turkeys, and thereby waived its lien.

Affirmed.

BOHLINGER, J., not participating.